Good afternoon, Illinois Public Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Mary L. Mick for presiding, case number 21-1403, Power Cartage, Inc. v. Set Environmental, Inc. Thank you, Darren. Good afternoon, gentlemen. As you probably both know, we generally allot 20 minutes per side. Before we start the time running, I'm going to ask you to introduce yourselves and tell us who you represent. And when counsel for the appellant introduces himself, I would ask you to let us know if you'd like to reserve any of that 20 minutes for rebuttal. I will also spread the briefs. Don't worry too much about the time limit. If we're in the middle of something, we will let you certainly finish it, but try to stay within that 20 minutes. All right, whenever you're ready. Beginning with the- Good afternoon, Your Honors. This is Jason Orleans on behalf of the appellant, Power Cartage. And I would like to reserve, if necessary, five minutes for rebuttal. Okay. Counsel? Good afternoon, Your Honors. My name is Bill Ransom. I represent the Plaintiff-Appellees, Set Environmental, Incorporated. Okay. Jason Orleans, whenever you're ready, you may proceed. Thank you, Your Honors. May it please the Court, my name is Jason Orleans. I represent the appellant, Power Cartage, in this case, which involves the risk of abuse by remediation companies, rec companies, and the use of chemical weapons. And I represent the Plaintiff-Appellees, Set Environmental, Incorporated, which is a group of insurance companies and cleanup companies operating in the state of Illinois. If left unchecked, such companies, such as Set Environmental, can take advantage of situations where a party happens to have caused an accident and their insurance company could be left, or the company themselves could be left footing an unreasonable bill. A company, such as my client, causes a loss, in this case, a fuel spill, and Set Environmental happened to be positioned to contract for the work that must be done because of their state approval, and because their company is referred to mine by the state police in an emergency situation. This is not like a contract where one is willingly seeking out a party to build a house or going to buy a car. There is an inherent imbalance of power occasioned by the circumstance, which raises the key question here on this appeal. Can there be a valid contract premised in a work authorization to provide an unknown scope of remediation services? In this case, the authorization was for any and all work, any and all work to remediate a fuel spill. Importantly, and fatally, there was no scope of work provided. I'm confused, counsel. I'm confused, because estimate, evaluate, and restore on a specific site, I'm not sure how much more specific it could have been, putting aside the question of what the cost was, which I think we all agree that there was no estimate of cost provided, but the scope of the work was pretty specific. Well, I'm sorry. Thank you. Thank you. Judge. I appreciate the question. Estimate was what they said in their contract that they would do. However, they did not provide an estimate. In fact, their own contract and paragraph a says that set is further authorized to continue with restoration and remediation of the premises. After the date of this authorization, with such continuing work to be agreed upon, according to sets scope or by. As I read the contract, it says upon written request. Set will make its best efforts to provide an estimate. Did your client ever make a written request? The request was not provided, but their own affirmative duty was to provide such a scope in their contract. And then their own contract says, even if we provide an estimate. You're not to rely upon it, and that's the contract. Mr. Orleans, can I interrupt you for a 2nd? Sure. Getting back to your point. Getting back to your point about the estimate. Your opponent says. In his brief that you didn't ask for an estimate. And sort of picture that's painted from the briefs. Is that your client signed the contract without reading it and never really did any follow up. At least that's what I can tell from the facts that have been presented. Now, you made the point that no estimate was provided and that the. Contractor was obligated under the contract to provide an estimate. And that the scope of work had to be agreed upon. Have you sued for breach of contract? For violation of those terms. We did not, but it is their obligation is their contract. And if there's any ambiguity regarding what their obligations were. Of course, be construed against them, but we have not sued. For breach of contract, we have simply defended. And the fact that there was no contract formation because the essential terms were lacking. There was no, there was no scope of work provided and this is. Much like the Supreme Court. Let me ask you that. This is an emergent situation. Your client signs a contract, he doesn't know. The extent of the spill. Obviously, the contractor doesn't know the extent of the spill. So this is a time and materials contract. And then presumably the contractor gets to the scene and presumably the contractor can. You know, at that point, evaluate the nature of the spill and. Would be in a position to provide some type of estimate. So why is it unconscionable? I mean, why is this something that's. Beyond the pale, it seems to me that this is not an unusual type situation, given the context. Well, it's not unusual in the remediation context where there's an emergency situation. So it's not like a normal contract, like I indicated, there isn't. Time for a well thought out bargain for exchange. But my clients handed a 5 page fine print contract that says. Basically, we're going to do anything and everything that we deem necessary to remediate the spill. But it doesn't say anything about how long it's going to take. How many crew members are going to be needed? How many pieces of equipment are going to be necessary? Isn't that all part of the estimate that you say? Set was obligated to provide you. And isn't that what the contract requires be agreed upon? And so if there's provisions in the contract. That protect you, why not invoke those provisions? Well, because there cannot be a contract. Under their own terms, if they don't provide a scope that's incorporated into the contract. They didn't provide us with the scope of work. They didn't estimate the work as per section of the contract, which I just read to the court. That says they have to agree with us. They have to provide those terms. It's much the same as the publishers case, the Supreme Court case. It says, well, we're just going to publish your work. But it doesn't say anything about the author's number of works. The time it's going to take to publish the work. The price to actually publish the work. How long it's going to be on the market. None of those terms. That's an essential term of the contract. So this is no different than the Chicago Publishers State Supreme Court case. Which recognized that you don't have a contract that's formed without a scope of work. So I would submit to the court. It's not incumbent upon us to sue for a breach of contract. When the contract wasn't formed in the first place. That's the message that I'm conveying. Where the terms are so uncertain and indefinite to constitute an enforceable contract. There is no contract. And in fact, I'm sorry. Okay. Is your issue isn't so much the cost incurred on the day of the incident. But more so the post-authorization cost and expenses. Is that correct? Well, that is correct. But also on the day of. Certainly set environmental is equipped to go out to the job site. And help secure the scene and help to provide an estimate. So once the authorization is signed. Okay, we're giving them the agreement to go out there and assess. But the contract is not completely formed until they provide us with that scope of work. And we have an opportunity to measure what work they're doing. And that would include on the day of the work itself. But your client said that if it were just, I think it was 38,000 from the day of. You know, he probably would have paid that. But that's fair. Yes, was thereafter that the bills just kept coming. That's correct. Okay. Right. And that is both. Well, procedurally and substantively unconscionable, because the bills keep coming based upon the maze of the 248 line items. In a price and rate sheet that were provided. Mr. Orleans, why is it unconscionable if the contract. Arguably has a provision in it that protects you. Insofar as it requires that the scope of work be agreed upon. And that estimate be provided. Why is it unconscionable when those provisions are there to protect you? Well, because what we are getting is simply a rate sheet of 248 items that says, this is what we can do anything on this on this menu of list of this list. And our work can go on. For an unlimited duration of time, if we so see it fit and keep sending you bills, that is unconscionable. There's no end to the contract. And it's just based upon their. Discretion alone, and we have no way to stop them. I asked you whether or not you will not pay. I asked you earlier, whether you had bought a breach of contract claim for. Based on these provisions regarding an estimate and. Agreeing on the scope of work and you said, no, are you defending. The breach of contract claim. Based on a breach of these provisions. Well, what we're saying your honor is that. There was no contract form, so this comes before the court. You came before the lower court on cross motions for summary judgment. So we were arguing as a matter of law in the lower court that no contract was formed. In the 1st place now, secondly, if there's no contract was formed, we never had the opportunity. Certainly work was done. We're not disputing that work. Wasn't completed, but we were never given an opportunity in the lower court to dispute the reasonableness necessity of the charges. The lower court simply entered judgment in favor of. Set environmental for 100% of what they were pursuing plus attorney's fees and interest. And the posture of the case in the lower court. On cross motions for summary judgment was simply that fact discovery had been completed. 213 F1 depositions of the parties have been completed. And the parties move for cross motions for summary judgment. So, excuse me. So, is it clear to the lower court that those were cross motions on liability only? And the damages remained an issue. If they, if the court was to grant summary judgment. To set environmental. Well, we certainly are. We certainly argue that in the alternative. I'm sorry, but did you make that clear to the lower court? In summary, we did. We did. I'm sorry, I didn't see anything in your cleanings in the lower court. And if there is, please direct me if you can. To where you made clear that if the contract was. Enforceable, you still want to dispute the amount of damages. Well, we, we certainly identified to the lower court in our motion for summary judgment in the that or if a court were to decide that there were issues of fact as to whether the contract was formed, we would also be disputing the reasonableness necessity. Of the work itself. Now, of course, if a contract is informed and the plaintiff would be probably amending their complaint for quasi contract relief, in which case that would be the issue in the case. What were the. What was the reasonableness and necessity of their charges and have they. Met that burden of proof. Are you suggesting that environmental could still make a claim at this point? If we were to reverse, they can still make a claim for quantum narrowing. Is that your position? If there was no, if the court were to find that there was no contract. They certainly could amend the complaint for quantum merit. And that would be essentially what we would ask. The lower court and what we've really the crux of this whole. Case has been. We dispute the reasonableness and necessity of the work, and the case in the lower court was postured such that we never reached the point where we disclosed 213 F3 expert witnesses, because there was only 1 case management order in the lower court for the entire time. Which was to complete. Fact party depositions. We still have an expert waiting in the wings that disputes the reasonableness and necessity of the charges, and we've never been given our day in court. And we're asking the court reverse to provide us with that day in court. Okay, on the amount. So so there's many possible outcomes here. Stick with me. So let's say. We find that summary judgment on liability was properly granted. And there is a contract that is enforceable. Then I think it's your alternative position before this court that we should really answer the amount of damages because even under this contract, the amount they're seeking. Is too much. Is that correct? That's your alternative argument? Yes, you're right. And my question for you is when and where just point me to a pleading. You made that argument in the lower court. I'd have to refer the court to. Our carriages summary judgment motion in the briefing on that. I don't have the record citation in front of that. You made it in your briefing. Yes. Okay. And then my reverse question, and then I leave you alone. At least for a few minutes. Where to reverse. Is it your position that we should remain to allow set to see quantum error? Well, I think that, you know. We have to balance the equities, and I certainly think that that would be a reasonable. Outcome. Of course, I don't necessarily agree with it 100% because we think that. Your honors could reverse and decide. That there was no. Contract, but I don't think the court. Would want to leave set environmental without a potential remedy for work that they did perform. It's simply we were deprived our day in court. With regard to the reasonableness and necessity of the charges. At issue and. You know, we're ready, willing and able to dispute. And have a have a factual. Hearing on that matter in the lower court, we weren't given the opportunity. I see my time is at about 15 minutes, so I. Be glad to yield and reserve my remaining time. Let me just see if anyone on the panel has questions. I do have 1. I'd like to point your attention to the October 21st, 2019 email. I believe that is. I'm not sure which exhibit that was. And this is the email. From set to press. We're in the case that there's a, this is a partial invoice. And the last next to last line says, now that I have your authorization to proceed with the balance of the cleanup. By 1st, applying for the tollway authority land closure permit. I will keep you posted. So I'd like for you to briefly address. Why that or. Address what you thought that particular line meant. Was it not an authorization to proceed with the balance of the cleanup and. Inherently, you would your client would. Pay whatever it costs to. Complete the balance of the work. Well, I think in your honor, I appreciate that an inherent in that question is yes. We were authorizing additional work to take place because we were told that additional work was required to restore the premises. The roadway to its pre incident condition. But there still was no scope or estimate. As an amount for that work, so. I would submit to your honors at a time and materials contract is not a carte blanche to whatever is whatever you want and use as much equipment or manpower or people as you want without that. Being tested through a scope or an estimate. Whereby the contract contracting party, my client can test whether there's adherence to that contract. There was no estimate. So all we got was a bill. Subsequent to that. Anything else from the panel. Okay, thank you. You still have 5 minutes. Thank you very much. Thank you may please the court again. I'm Bill Ransom on behalf of set environmental. This case. Has to do with. The emergency remediation of fuel spill. That power cartage cause. And they know Illinois tool way that involve both a construction site. And a grass medium. At the time, the contract was entered into. The parties didn't know the extent of the fuel spill. Chris Fogo, the CEO, vice president and. Primary shareholder of power cartage. And no idea what the amount of the spill was. He was contacted by an Illinois state trooper. Who told him he told Mr. Fogo that he needed to get. A clean up crew in a tow truck out to the site right away. Mr. Fogo solicited from the state trooper, a name of a cleanup crew. State trooper called back a few minutes later and gave Mr. Fogo the. The name of set environmental set environmental. Was called by Mr. Fogo a few minutes later and said, said they could handle the. The cleanup and sent over their emergency authorization contract along with schedules. As to materials and labors. That would be involved in that. Mr. Fogo took off 23 minutes to consider. The, the agreement that he was signed. Signed and initialed each page and faxed it back to. To send or email, I'm sorry, scanned and emailed it back to set environmental. And there's only after the work was completed. That power cartage had any problem with what was going on. Mr. Fogo was asked in his deposition, whether he ever asked for an estimate on that. And the court talked a little bit about estimates in the contract. Section C of the contract. Provides that the client can make a written request for estimates and that will be done. That will be complying with Mr. Fogo said he never asked for an estimate. He was questioned in his deposition, whether he ever asked about any of the work was that was going done. That never occurred either. He was asked whether he ever went to the accident site. To to visit it again. He never did that. Nobody from power ever asked for an estimate. Nobody from power ever asked to that different work be done. Nobody from power asked what work was being done. Nobody from power ever went to the accident site. Where their fuel, their diesel fuel had spilled. To see what was going down. So let's talk about the different defenses that that power has asserted. First of all, power has never sued. Set or filed a counterclaim against that for any alleged breach of the agreement between them. It did file affirmative defenses and those affirmative defenses were for lack of meeting of the minds. Unconscionable terms and that the contract was entered into under duress. It never in its affirmative defenses said there was not a valid contract because essential terms were missing. But putting that aside, let's talk about the two things that that power has claimed, which were missing essential terms. The first is scope. The next is that labor materials and equipment was not specified in the contract. As you know, a contract is sufficient. The terms are sufficiently definite and certain if it enables a court to determine what the parties agreed to. In this case, the scope of the contract agreement in the first paragraph of the contract shows that that set was going to remediate by removing subsoil and surface soil and restore the area around the contaminated area. Uses the term contaminated area, uses the subsoil, uses surface, it uses the term, term restore. That's what it's required to. And, you know, and by the way, it should be pointed out that since this was on an IDOT property on Illinois tollway system, they have certain things that are required of hazardous waste remediation company. This was the scope of set obligations. Uh, the ransom. Can I interrupt you for a second? So, uh, Mr. Orleans talked earlier about, um, you know, the contract requiring agreement on scope of work. He acknowledges he hasn't sued or defended on the basis of that provision, but do you to obtain powers agreement on the scope of work before it commenced work? I'm sorry, I lost you before. You acknowledge that set was obligated to obtain powers agreement on the scope of work? Well, they did get powers agreement on the scope of work, the scope of work provision in the first paragraph of the contract is that, um, set was supposed to restore the contaminated area. So following up on that, following up on that, just a hypothetical, if these, you know, the work that was required was so extensive that would cost $10 million. Does that mean that, uh, um, that set, um, can proceed, um, in doing the work without obtaining, um, powers agreement. If, if the spill, well, that that's a little difficult to answer because if we're assuming that there's a, the, the, the remediation is $10 million, we're talking about a much bigger project that, and the, uh, the, the circumstances would definitely be different. The involvement of, of other, uh, entities will be, whether it be the Illinois EPA or first responders from fire departments and things like that would all be different, but they wouldn't have to, they would not have to say this is going to be at least $10 million before they begin work. Uh, I think, uh, any buddy who would be involved in that would know that it's going to be a substantial amount. And I will say this also about, uh, about, you know, limiting the amount of what a contract is, which, which seems to be what powers is arguing. Powers seems to be arguing that there, that scope has to do with limitations on how much work can be done, limitations on how much equipment can be used and limitations on how much something will cost. But that isn't necessarily what the scope of a contract is. For example, you know, an attorney agreed in something that we're all familiar with an attorney agrees to represent somebody in a case. Uh, the scope of that contract is that attorney representing that person in the case. It isn't how many depositions he's going to do or how many subpoenas he's going to send out or whether it's good. He's going to go to on, on appeal. Um, similarly in a service contract, like with, with, with what that example council, once the initial case is over, you then would have to sort of renegotiate any costs for enforcement, let's say, after the initial judgment is entered. I think here, the issue is not as much. Uh, the costs that were incurred on the day of the incident, but essentially, you know, the services after the date of the incident, meaning the continued restoration of remediation that's referred to in paragraph a of the contract, which was your exhibit a, um, I think for me, that is more of the issue because essentially there has been no limitation set on, um, what the scope is post, you know, date of incident, as well as what the potential costs could be for that. As I see it, it seems like, you know, essentially you have a blank check to do whatever you decide is, you know, necessary or that you want to do after the initial cleanup is done. Because I think on the day of the incident, the initial issue is let's get this expressway cleaned up so that we can resume, you know, use or business as usual. But thereafter, you know, my reading says that there's supposed to be some subsequent agreement. Can you address that? Sure, sure, I'd be happy to. First of all, legally, if you look at at the contract itself, it says that the continuing work will be work agreed upon according to set scope. And the scope's defined in the previous paragraph. That's the remediation of the contaminated area. And then it says, or by subsequent written review. So it's in the alternative. First of all, it says that the continuing work will be according to the scope that's in the first paragraph. But you've omitted the language agreed upon, and that's the critical language, right? You mean agreed upon? In the conversation where it says, quote, with such continuing work to be agreed upon according to set scope. Now, you emphasize the language according to set scope. But what I'm suggesting to you is that we also have to give some effect to the language agreed upon. No, and I agree with you that there is some effect to that, but it was agreed upon in the prior paragraph. The other thing I was saying, there's a factual issue here in which Chris Fogo, the COO, the Chief Operating Officer of Power, never asked for any updates, never asked for any continuing information on the work, never visited the, and he admits all this in his deposition, never visited the site to see what was going on. So he just sat there and never asked for any continuing information regarding the work. And finally, I'd point out, and this has been endemic throughout this litigation, that Power never pled this, never made this argument, never put this in an affirmative defense, never identified this in answers to written interrogatories, never identified this in their deposition. It's only at this point that it's actually being raised. So Power had the ability to file whatever counterclaim it wanted. It filed an affirmative defense, which was stricken completely, and then filed an amended affirmative defense that was meeting of the minds, unconscionability, and duress, but never brought up these allegations in that, didn't show in any subsequent production as far as discovery went. So- I'm confused by what you just said, because the argument here is, that they're making is that there was no meeting of the minds. That is exactly the argument they're making here, and it's exactly the argument they made in the circuit court. Okay. So what do you say to moving it for the first time?  They never put this as factually part of their pleadings as the affirmative defense. I'm not sure whether that user is not an affirmative defense, but in any event, it was certainly litigated on cross motions for some objective, and certainly be a defense to a breach of contract claim if there's no contract. Whether it's in the nature of affirmative defense or not, I think it's kind of water under the bridge at this point. Yeah, Justice McPherson, I read through the briefs, and if I'm mistaken, I apologize, but I don't recall seeing that raised as part of the cross motions for summary judgment. Meeting of the minds certainly was raised. I'm sorry, but that's what we're talking about, meeting of the minds. What are you talking about? Well, we were talking about the continuing work authorization. Yes, that would be in the nature of a breach of contract claim, I think, which Justice Taylor asked counsel about, and counsel said he hasn't brought a breach of contract. So I think you're right. I think to the extent that's relevant, that goes to whether there was or wasn't a meeting of the minds at this point. But let me ask you a question, because I did ask counsel about this. Assuming, putting aside the question of whether there is or isn't a reforceable contract, do you believe that the cross motions address the amount of damages? Absolutely. Absolutely, they address that. And Power Cartridge never made any opposition to the damages that Seth was seeking. And I pointed out in my briefs, I think both below and at the appellate level, that when discovery was done as to Power Cartridge's position as to damages, and they never made any dispute as to the amount that was billed, the work that was done, or whether any of it was done in a workmanlike manner. And they were given the opportunity to do that in discovery, and they never did. In oral discovery with Chris Fogo, again, Power's representative and the only witness they presented, he was asked whether he disputed any of the billing or any of the work. And he said he didn't, he couldn't, he just didn't know. So they never presented anything in the lower court. They have presented an argument that a one-sided attorney's due provision is unconscionable. And that was certainly part of what the trial court enforced. They have raised that, and they raised that below, I believe. Well, again, they did raise it after they didn't, after they didn't in their amended affirmative defense. They did raise it after written, they didn't identify it in written discovery. They did raise it after they didn't identify it in oral arguments. They raised it in their motion for summary judgment for the first time. And as I pointed out, I believe below in here that those types of provisions have been enforced before, I believe the, I think it was the Wagner case. They've also been stricken, they've been both. They've been both, but here's a situation where they, you know, it's through their actions that there's attorney's fees and costs provision was triggered. It isn't because they had control over whether it was ever going to be triggered. They decided not to pay their bill, any of it whatsoever. And they only decided that after the contract or the invoices were sent out. I believe my time's up here. Any questions from anyone else? Okay, well, thank you. I just asked you to deny the appeal and affirm the court below. Thank you very much. Thank you, counsel. Thank you, your honors. Just, I'll try to be brief because this isn't the most complicated appeal that your honors have probably heard. But I will say this, that if power cartridges denying, which we have an enforceable contract or saying that a contract is unconscionable and therefore void inherent in that, which we argued in the lower court and before your honors is the fact that we're not responsible for the damages that are being sought under that contract. So, Judge Taylor, I believe you indicated and it came up again in counsel's argument concerning, well, we haven't pledged a breach of contract. Well, we certainly could, but if we're not accepting the fact that there was a valid and enforceable contract, then as I read some of the cases, I think it's the farm case that unreported decision concerning the Robertson, I believe a Roberson, you know, it struck me as odd in that case that there were two parties, both suing on a contract, but both believing that the terms were different and that wouldn't be much different than in this case. Although I don't feel it necessary and I could be wrong to sue on a contract that we believe is not enforceable, but there was never, it was never answered in the first place. So I just point that out with regards to you. You descended below on the basis that there was no meeting of the minds, correct? Correct. And the basis for that defense is that there was no agreement on scope of work. Is that correct? Correct. Okay. So in that regard, is it your position then that section A under emergency response, which is called continuing work authorization, is it your position that any work that took place after the date of the incident, that that work, the scope of that work had to be agreed upon by the parties. And in the absence of any such agreement, there was no meeting of the minds. Is that your argument? That's, that's my argument. Yes, judge. It is also, I would also, I'm sorry. How much other damages, you know, the damages in this case were, I think, over a hundred thousand dollars. How much of the damages are represented by work that took place the day after the date of the incident? Approximately. I'd have to go check the record on those invoices. Okay. Okay, that's my, that's all I have. Okay. Even, but part of our primary argument is that even the work on the day of the so-called emergency response, that scope still had to be agreed upon because it doesn't, just because there's an emergency emergent response, doesn't mean that they could send out, SEP could send out 20 trucks when only 10 trucks were needed or have 13 men. And I'm just speaking in theoretical numbers here. But that's a question of damages, right? I mean, and it sounds like you haven't offered any evidence at some rate judgment to dispute the amount of damages. Um, well, our position is that damages in this instance would be an issue for an, for expert opinion. And I'm holding in my hand in October 7th, 2020 order. That's the only case management order in this case, which simply identified that party depositions were to be completed by February 26th, 2021. As we know, in the lower court in Cook County, case management dates are staggered. There was never an expert disclosure deadline set in this case. And we certainly have and would have an expert to be clear. You're, you're telling the court that if we were to examine the briefs on summary judgment, we will find some statement in your brief telling the court that, um, you haven't had a chance to do expert discovery and that you need expert discovery to dispute the amount of damages. Is that right? I can't be certain on that. I can't be certain. I can only be certain that we disputed the, that the contract existed. And certainly if given the opportunity in the lower court, we would seek leave to disclose an expert as soon as possible to dispute those damages. We never, uh, quite frankly, it was astonishing that the lower court accepted 100% of the damages without giving us an opportunity to inquire or have an evidentiary hearing as to the, the amount of those damages by denying that there, the existence of a contract, we're denying that the entitlement to damages as pledged. And that would, that would be the position of the lower court. You decidedly took an all or nothing approach, right? You didn't take a sort of in-between approach where you actually challenged the amount of damages, assuming that there's a valid contract. I, I believe that by denying the, the existence of the contract, we're taking the position that all of the, the, both the contract and the damages are in dispute. Thank you.  Thank you, judge. Um, but it is clear that, you know, our, our position is, and even counsel admitted, I believe in his comments to the court that there are factual issues and the, the issue just that it's very, a very basic level. The issue of contract formation is a question of fact for the trier fact to decide what set. Obligate itself to do in terms of providing the scope of work, both on the day of, and as for continuing work, they obligated themselves, according to our view of the facts in their own contract to provide us with the scope of work on the day of and continuing. They didn't do that. You're out of time. And you're also, thank you. Thank you. I will then yield to the court and simply ask that the motion for summary judgment be reversed that the decision in favor of set be reversed. Thank you. Okay. Thanks to both. Thank you. It's really, it's a more complicated and interesting case than I think we've given the credit for, but thank you very much for your presentation. And I'm going to take the matter.